This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**ALICIA MONTOYA, as Personal**
**Representative of the Estate of**
**ADRIAN ARCHULETA,**

Plaintiff-Appellant,

v.                                                     **NO. A-1-CA-35178**

**WALGREEN CO.,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Valerie A. Huling, District Judge**

Fine Law Firm
Mark Fine
Albuquerque, NM

for Appellant

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Jocelyn Drennan
Brenda Saiz
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**VARGAS, Judge.**

{1} Alicia Montoya (Plaintiff), as Personal Representative of the Estate of Adrian Archuleta, appeals the district court's grant of summary judgment in favor of Defendant Walgreen Co. (Walgreens). Plaintiff contends that there are genuine issues of material fact regarding whether Walgreens' negligence proximately caused Mr. Archuleta's death. We affirm.

**BACKGROUND**

{2} Adrian Archuleta began receiving opioids after suffering severe neck and back injuries from a motor vehicle accident. Mr. Archuleta had a long history of accidental prescription medication overdoses and, in March 2010, died of methadone toxicity as a result of an accidental overdose. Between January 9, 2009 and March 22, 2010, Mr. Archuleta received prescriptions for large quantities of opioids (methadone and oxycodone) and benzodiazepines (alprazolam, diazepam, lorazepam, and temazepam) from ten different medical prescribers, filling those prescriptions at thirteen different pharmacies, including seven Walgreens stores.

{3} On September 1, 2009, Dr. Barry Maron, one of Mr. Archuleta's frequent prescribers of opioids and benzodiazepines, included a handwritten note on Mr. Archuleta's prescription for blood pressure medication: "No further Rx's until cleared by psych[.] Medication abuse!" Despite receiving Dr. Maron's warning note,

Walgreens filled seven additional prescriptions for Mr. Archuleta totaling over 400 opioid and benzodiazepine pills, including six prescriptions from Dr. Maron that post-date his note. In all, Dr. Maron wrote an additional twenty-six prescriptions for Mr. Archuleta totaling more than 2,700 opioid and benzodiazepine pills in the six-and-a-half months between the time of his warning note and Mr. Archuleta's death on March 23, 2010. Mr. Archuleta survived an accidental prescription medication overdose a month before his death and resumed filling opioid and benzodiazepine prescriptions four days later. In total, Mr. Archuleta filled thirty-five prescriptions totaling 3,315 opioid and benzodiazepine pills between the date of Dr. Maron's note and March 22, 2010, when he filled his last prescription.

{4}     On March 23, 2010, one day after filling a ninety-count, thirty-day supply of methadone prescribed by Dr. Maron at Pharmacy Plus, Mr. Archuleta succumbed to a second accidental prescription medication overdose and died as a result of respiratory depression, secondary to methadone toxicity. At the scene of Mr. Archuleta's death, only sixty-seven of the ninety methadone pills remained from the prescription filled the day before. Postmortem toxicology revealed markedly elevated levels of methadone as well as slightly elevated levels of alprazolam, bupropion, and zolpidem. It is undisputed that Walgreens did not sell Mr. Archuleta the actual pills that resulted in his fatal overdose. The last prescription Mr. Archuleta filled at

Walgreens was for ninety methadone pills almost six weeks earlier on February 11, 2010.

{5} Plaintiff sued Walgreens on theories of negligence and negligence per se. Plaintiff alleged that Walgreens acted negligently by selling large quantities of a dangerous combination of drugs to Mr. Archuleta when it knew or should have known that he was abusing the medications and the drugs posed a high risk of overdose to him. Walgreens moved for summary judgment, arguing that Plaintiff could neither prove that Walgreens breached any duty it owed Mr. Archuleta nor that any of its acts or omissions caused Mr. Archuleta's death. In response, Plaintiff attached the deposition of Dr. George Glass who opined that Walgreens "abetted" Mr. Archuleta's addiction and his death from methadone toxicity was caused in part by Walgreens' failure to intervene to prevent further drug use.

{6} The district court granted Walgreens' motion, noting that while matters of causation are generally reserved for the jury, Plaintiff failed to show a genuine issue of material fact that Walgreens' actions or failures caused Mr. Archuleta's death, instead concluding that Mr. Archuleta's death was caused by taking twenty-three methadone pills from a prescription that was not filled by Walgreens.

**DISCUSSION**

{7}     On appeal, Plaintiff argues that a genuine issue of material fact exists as to whether Walgreens' alleged negligence, along with Mr. Archuleta's consumption of the twenty-three methadone pills, was the concurring proximate cause of Mr. Archuleta's death, or alternatively, that Walgreens' alleged negligence deprived him of a chance of recovery. Plaintiff contends that the district court erroneously weighed the evidence and deprived the jury of its right to determine proximate cause when it concluded that the singular cause of Mr. Archuleta's death was his overdose from pills taken from the Pharmacy Plus prescription filled the day before his death. Because Plaintiff failed to produce evidence to support a logical inference that, had Walgreens acted differently, Mr. Archuleta would not have died, we affirm the decision of the district court.

**Standard of Review**

{8}     We review an order granting summary judgment de novo. *Beggs v. City of Portales*, 2009-NMSC-023, ¶ 10, 146 N.M. 372, 210 P.3d 798. Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 1-056(C) NMRA. If the movant establishes a prima facie case that there are no issues of material fact and that it is entitled to judgment as a matter of law, "the

burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Romero v. Philip Morris, Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted); *Goodman v. Brock*, 1972-NMSC-043, ¶¶ 8-9, 83 N.M. 789, 498 P.2d 676. This burden cannot be met with allegations or speculation, but only with admissible evidence demonstrating a genuine fact issue requiring trial. Rule 1-056(C), (E); *Schmidt v. St. Joseph's Hosp.*, 1987-NMCA-046, ¶ 5, 105 N.M. 681, 736 P.2d 135. Claimed disputed facts "cannot serve as a basis for denying summary judgment" if the evidence adduced is insufficient to support "reasonable inferences." *Romero*, 2010-NMSC-035, ¶ 10 ("An inference is not a supposition or a conjecture, but is a logical deduction from facts proved and guess work is not a substitute therefor." (internal quotation marks and citation omitted)). Summary judgment is proper "when a defendant negates an essential element of the plaintiff's case by demonstrating the absence of an issue of fact regarding that element." *Mayfield Smithson Enters. v. Com-Quip, Inc.*, 1995-NMSC-034, ¶ 22, 120 N.M. 9, 896 P.2d 1156; *see Goradia v. Hahn Co.*, 1991-NMSC-040, ¶ 18, 111 N.M. 779, 810 P.2d 798 ("A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." (alteration, internal quotation marks, and citation omitted)).

**Causation**

{9}    To successfully prosecute a negligence claim, a plaintiff must not only show the existence of a duty from the defendant to the plaintiff and a breach of that duty, but also that "the breach [was] a proximate cause and cause in fact of the plaintiff's damages." *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 73 P.3d 181, *abrogated on other grounds as recognized by In re Otero Cty. Hosp. Ass'n*, 527 B.R. 719, 764  (Bankr. D.N.M. 2015). Following the hearing on Walgreens' motion for summary judgment, the district court determined that, while Walgreens owed Mr. Archuleta a duty, "[t]he problem . . . is the causation issue." Holding that Plaintiff could not prove the element of causation, the district court granted Walgreens' motion for summary judgment. On appeal, the parties have not raised the issue of duty or breach. We therefore express no opinion as to whether the district court properly found the existence of a duty owed by Walgreens to Mr. Archuleta or whether an issue of fact existed as to whether any such duty was breached. Instead, we limit our analysis to the issue of causation.

{10}    Plaintiff contends that the deposition testimony of her expert witnesses creates a genuine issue of material fact as to whether Walgreens' negligent failure to detect Mr. Archuleta's elevated risk of overdose, negligent defiance of Dr. Maron's warning, and negligent failure to communicate with Mr. Archuleta's prescribers were the

concurring proximate causes of Mr. Archuleta's death. Plaintiff's experts, however, fall short of concluding that Walgreens' actions and failures to act were the causes in fact of Mr. Archuleta's death.

{11} In support of her claim, Plaintiff tendered an affidavit and deposition testimony from Dr. William Simonson, Plaintiff's expert pharmacologist. Dr. Simonson's testimony focused primarily on the standard of care for pharmacists. He provided an affidavit in which he opined that "[i]t would have been the pharmacist's responsibility to communicate with the prescriber(s) and the patient in an attempt to determine the legitimacy and the therapeutic need for these medications." Noting that it did not appear any such communication was made, Dr. Simonson opined that "Walgreens failed to meet the standard of practice for pharmacists for continuing to fill prescriptions for Mr. Archuleta including prescriptions for controlled substances apparently without first having Mr. Archuleta being cleared by a psychiatrist as specified by Dr. Maron." As a result, Walgreens pharmacists "helped enable Mr. Archuleta maintain an ongoing supply of controlled substances which contributed to the continuation of his addiction." Dr. Simonson conceded, however, that he did not have an opinion as to the cause of Mr. Archuleta's death. Nor did he offer an opinion that connected Mr. Archuleta's death in any way to a particular prescription filled by Walgreens. Instead, Dr. Simonson testified, "I'm not saying they caused or

8

contributed [to Mr. Archuleta's death]. I'm saying they could have caused or contributed, because, you know, we're speculating in a lot of ways. Had they had all of the information, communication I'm assuming would have ensued regarding other prescribers prescribing medications. And then, at some point, Mr. Archuleta may not have had all the. . . other drugs in addition to the methadone."

{12} Plaintiff also provided deposition testimony from Dr. George Glass, a psychiatrist and addictionologist. Dr. Glass testified that "the pattern of Dr. Maron's prescribing excessive amounts of medication . . . caused Mr. Archuleta's death." That pattern, he explained, went on for almost two years and "would have been noticed by a pharmacist. . . who looked at the records, and at that point somewhere in the process they would have said: This guy is a drug addict, he's working several doctors, if not several pharmacies, and we need to notify people or cut him off." Had that happened, Dr. Glass opined, "Mr. Archuleta perhaps would have found another pharmacy, he perhaps would have gone to a different doctor. He also may have done what they call in the addiction recovery business, hit bottom, where he was out of money and out of supplies and suppliers and might have had to go to treatment." "So in essence, by Walgreens continuing to fill the prescription without any question or any comment, they abetted this man's addiction. . . . [T]hey enabled him to continue in his disease until he died." Notwithstanding his list of possible outcomes, and with no further

9

explanation of his rationale, Dr. Glass opined that, had Walgreens refused to fill additional prescriptions for Mr. Archuleta, he would still be alive.

{13} When considering the issue of causation, we note that "[t]he general term 'proximate cause' encompasses both causation in fact and proximate causation as a limitation place[d] on the tort-feasor's responsibility." *Terrel v. Duke City Lumber Co.*, 1974-NMCA-041, ¶ 102, 86 N.M. 405, 524 P.2d 1021, *aff'd in part, rev'd in part sub. nom. Duke City Lumber Co. v. Terrel*, 1975-NMSC-041, 88 N.M. 299, 540 P.2d 229. We focus our analysis on the first element of proximate cause, causation in fact. To prove causation in fact, "it is essential to show that the tortious action produce[d] the injury, and without which the injury would not have occurred." *Id.* ¶ 103 (omission, alteration, internal quotation marks, and citation omitted); *see* UJI 13-305 NMRA (providing that an act or omission is a "cause" of any injury if it contributes to bringing about the harm and if injury would not have occurred without it). "To establish liability, there must be a chain of causation initiated by some negligent act or omission of the defendant, which in legal terms is the cause in fact or the 'but for' cause of [the] plaintiff's injury." *Chamberland v. Roswell Osteopathic Clinic, Inc.*, 2001-NMCA-045, ¶ 18, 130 N.M. 532, 27 P.3d 1019. The cause in fact of an injury is that without which the injury would not have occurred. It "need not be the last act, or the nearest act to the injury," but it must have actually aided in producing the

10

injury, *Kelly v. Montoya*, 1970-NMCA-063, ¶ 28, 81 N.M. 591, 470 P.2d 563, and it must be "reasonably connected as a significant link to the injury." *Talbott v. Roswell Hosp. Corp.*, 2005-NMCA-109, ¶ 34, 138 N.M. 189, 118 P.3d 194. Nonetheless, "[w]here several factors may have caused [the harm], the plaintiff cannot recover unless he proves that his injuries were sustained by a cause for which the defendant is responsible." *N.M. State Highway Dep't v. Van Dyke*, 1977-NMSC-027, ¶ 9, 90 N.M. 357, 563 P.2d 1150.

{14} On summary judgment, "(1) all logical inferences are to be resolved in favor of the non-moving party and (2) all inferences must be viewed in a light most favorable to a trial on the merits." *Madrid v. Brinker Rest. Corp.*, 2016-NMSC-003, ¶ 20, 363 P.3d 1197. As we previously noted, the evidence adduced by a party opposing summary judgment "must result in *reasonable* inferences." *Id.* ¶ 18. (emphasis added) (internal quotation marks and citation omitted). "An inference is not a supposition or a conjecture, but is a logical deduction from facts proved and guess work is not a substitute therefor." *Id.*

{15} The parties do not dispute that Mr. Archuleta died of methadone toxicity. Nor do they dispute that the final methadone prescription filled by Mr. Archuleta the day before his death was not filled by Walgreens, but was filled by another pharmacy. Plaintiff argues, nonetheless, that the expert testimony of Dr. Simonson and Dr. Glass

gives rise to a logical inference that Walgreens' alleged failure to detect Mr. Archuleta's risk of overdose, its alleged defiance of Dr. Maron's warning, and its alleged failure to communicate with Mr. Archuleta's prescribers was at least a concurrent cause of Mr. Archuleta's death. Dr. Simonson, however, conceded that he did not have an opinion as to the cause of Mr. Archuleta's death, admitting that he was "speculating in a lot of ways." His testimony, therefore, fails to support Plaintiff's claim that Walgreens was the cause in fact of Mr. Archuleta's death.

{16}    With regard to Dr. Glass's testimony, we initially note that Dr. Glass testified that it was Dr. Maron's pattern of prescribing excessive amounts of medication that caused Mr. Archuleta's death. With regard to Walgreens, Dr. Glass testified that Walgreens should have noticed Mr. Arculeta's drug addiction and refused to fill further prescriptions. Dr. Glass opined that, had Walgreens refused to fill Mr. Archuleta's prescriptions, "Mr. Archuleta perhaps would have found another pharmacy, he perhaps would have gone to a different doctor . . . . [or h]e also may have hit bottom . . . and he might have had to go to treatment." This testimony falls short of showing that, absent Walgreens' failures, the injury to Mr. Archuleta would not have occurred—that Walgreens' failures caused his death. *See* UJI 13-305. While Dr. Glass notes that Walgreens' alleged failures abetted Mr. Archuleta's addiction, enabling him to continue in his disease until he died, his testimony fails to create a

12

genuine issue of material fact that, but for Walgreens' negligence, Mr. Archuleta would not have died.

{17} Pointing out that on summary judgment, all logical inferences must be resolved in favor of the non-moving party, Plaintiff argues that a jury could reasonably infer that, but for Walgreens' failure to act, Mr. Archuleta would not have died. Plaintiff contends that Walgreens was negligent by its failure to detect Mr. Archuleta's elevated risk of overdose, by its defiance of Dr. Maron's warning, and by its failure to communicate with prescribers. While conceding that he offered no opinion on a pharmacist's standard of care, Dr. Glass testified that Walgreens should have intervened in Mr. Archuleta's treatment. Intervention, he testified, could have been by either contacting Mr. Archuleta's physician, having a discussion with the patient, or refusing to fill the prescription. Plaintiff, however, offers no testimony or other evidence to support a conclusion that, had Walgreens intervened in Mr. Archuleta's treatment, as suggested by Dr. Glass, Mr. Archuleta would not have died, instead, arguing that a jury can reasonably infer that had Walgreens intervened, Mr. Archuleta would not have died. None of Dr. Glass's proposed interventions, however, give rise to a reasonable inference upon which Plaintiff can rely to overcome summary judgment. Mr. Archuleta was a drug addict who was filling prescriptions from different doctors at different pharmacies. His actions of visiting different doctors and

13

filling prescriptions at different pharmacies indicate that he was aware that doctors and pharmacists would not approve of his behavior. Absent more, a fact-finder cannot logically deduce that had Walgreens intervened, Mr. Archuleta would have stopped abusing drugs and would not have died. Any such conclusion is nothing more than supposition or conjecture. *See Madrid*, 2016-NMSC-003, ¶ 18. "Where the facts are not in dispute and the reasonable inferences from those facts are plain and consistent, proximate cause becomes an issue of law." *Id.* ¶ 19 (internal quotation marks and citation omitted). Because Plaintiff failed to present any evidence that would allow a jury to logically deduce that Walgreens' actions or failures to act were the cause in fact of Mr. Archuleta's death, the district court properly granted summary judgment to Walgreens.

**Loss of Chance**

{18} Finally, Plaintiff argues that Walgreens' negligent acts diminished Mr. Archuleta's chance of surviving his drug addiction, and she is entitled to be compensated for this loss of chance. Plaintiff's loss of chance theory, however, suffers from the same deficiencies as her other negligence theories, namely her inability to show that a genuine issue of material fact exists that Walgreens' negligence was the cause in fact of Mr. Archuleta's reduced chance for survival.

**{19}** As with a traditional negligence claim, to prove a loss of chance claim requires that the plaintiff "show that [the d]efendant breached a duty of care owed to [the decedent] and that [the decedent's] lost chance of survival . . . was likely caused by that breach." *Baer v. Regents of Univ. of Cal.*, 1999-NMCA-005, ¶ 19, 126 N.M. 508, 972 P.2d 9. Causation evidence "must show to a reasonable degree of medical probability that the defendant's negligence caused the loss of the chance of a better result." *Alberts v. Schultz,* 1999-NMSC-015, ¶ 29, 126 N.M. 807, 975 P.2d 1279. Under a loss of chance theory of recovery, Plaintiff must provide at least some evidence that, without Walgreens' negligence, Mr. Archuleta would have had a measurably increased chance of survival. *See Baer*, 1999-NMCA-005, ¶ 20. "The burden of proving reasonable medical probability rests with the plaintiff, and a causal connection between the alleged act of malpractice and the plaintiff's loss or damages cannot be substantiated by arguments based upon conjecture, surmise, or speculation." *Alberts*, 1999-NMSC-015, ¶ 38.

**{20}** In this case, Plaintiff has failed to carry her burden. Dr. Simonson, as we previously noted, expressed no opinion as to the cause of Mr. Archuleta's death, admitting that he was "speculating in a lot of ways." Plaintiff's psychiatric and addictionology expert, Dr. Glass, testified that had Walgreens appreciated Mr. Archuleta's drug addiction and refused to fill further prescriptions, it was possible Mr.

Archuleta may have found other avenues to obtain these drugs, but he may also have hit bottom and gone to treatment. While Dr. Glass notes that by Walgreens continuing to fill Mr. Archuleta's prescriptions without any question or any comment, it abetted his addiction, enabling him to continue in his disease until he died, his testimony fails to establish that, but for Walgreens' negligence, Mr. Archuleta would have had, to a reasonable degree of medical probability, a measurably increased chance of survival. *See Baer*, 1999-NMCA-005, ¶ 19. Though Dr. Glass describes several possible outcomes had Walgreens acted differently, he fails to provide any information about the likelihood of each such outcome, including whether Mr. Archuleta's chances of survival would have measurably improved. Absent expert testimony, to a reasonable degree of medical probability of the increased chance of survival, Plaintiff fails to establish a genuine issue of material fact for trial that Walgreens caused Mr. Archuleta harm and summary judgment was proper.

**CONCLUSION**

{21}    We affirm.

{22}    **IT IS SO ORDERED.**

_____

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**M. MONICA ZAMORA, Judge**