The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:_____

Filing Date: April 21, 2025

**No. A-1-CA-41357**

**MARIA CUMMINGS, individually and as Personal Representative of the ESTATE OF SHAUN MICHAEL CHAVEZ; JANA VALLEJOS, individually and as Personal Representative of the ESTATE OF DONOVAN VALLEJOS,**

Plaintiffs,

and

**LEON SALAZAR,**

Plaintiff-Appellant,

v.

**BOARD OF REGENTS OF THE UNIVERSITY OF NEW MEXICO, a body corporate of the State of New Mexico, for itself and its public operations; UNIVERSITY OF NEW MEXICO HEALTH SCIENCES CENTER, and its components; UNIVERSITY OF NEW MEXICO HOSPITAL; and UNIVERSITY OF NEW MEXICO SCHOOL OF MEDICINE,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Daniel E. Ramczyk, District Court Judge**

Freedman Boyd Hollander & Goldberg P.A.
Joseph Goldberg
Albuquerque, NM

Vigil Law Firm, P.A.
Alexandra Cervantes
Jacob G. Vigil
Albuquerque, NM

for Appellant

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Jocelyn Drennan
R. Nelson Franse
Edward Ricco
Albuquerque, NM

McDermott Will & Emery LLP
Tom Ryan
Los Angeles, CA

for Appellees

**OPINION**

**HANISEE, Judge.**

{1} In this long-running class action case, initially brought in 2001 and involving pediatric cancer patients treated by Defendant University of New Mexico Hospital (UNMH) from the mid-1970s to the mid-1990s, Plaintiff Leon Salazar appeals the district court's order granting summary judgment in favor of UNMH regarding Plaintiff's loss-of-chance medical malpractice claim. Plaintiff argues the district court erred when it determined that Plaintiff needed to demonstrate actual physical harm to proceed with his loss-of-chance claim, and even if the district court did not err in this conclusion, Plaintiff's evidence demonstrated a genuine issue of material fact regarding such actual harm. We conclude that *Alberts v. Schultz*, 1999-NMSC-015, 126 N.M 807, 975 P.2d 1279, requires an actual physical harm, which Plaintiff has not demonstrated. Thus, we affirm.

**BACKGROUND**

{2} The class of plaintiffs, which Plaintiff represents, are surviving pediatric Acute Lymphoblastic Leukemia (ALL) patients who were treated during the identified period of time at UNMH. The patients alleged that UNMH's "institutional failure to maintain adequate safety processes and procedures allowed for improper treatment protocols to be administered to ALL pediatric cancer patients for twenty years and caused them to lose their best chances for survival or a better outcome."

After a 2019 evidentiary hearing on Plaintiff's motion, the district court granted class certification and recognized Plaintiff as the class representative.

{3} Pertinent to this appeal are various district court orders granting UNMH's motion for summary judgment on Plaintiff's individual claims and Plaintiff's motions for reconsideration. To begin, UNMH argued that Plaintiff was unable to demonstrate he suffered any actual injury from the medical malpractice he asserted, and that such is a prerequisite to a loss-of-chance claim under the New Mexico Tort Claims Act (the TCA), NMSA §§ 41-4-1 to -27, -30 (1976, as amended through 2020).[1] These issues were fully briefed by the parties, and UNMH's motion was initially granted by the district court in a 2022 written order without a hearing. In that order, the district court agreed with UNMH that an actual harm must be shown in order to maintain both a loss-of-chance claim and a cause of action under the TCA, and that Plaintiff's evidence failed to establish a "demonstrable physical harm as a result of the alleged negligent care which he received from Defendants" nor "that he will suffer any specific future physical harm as a result of the alleged negligent treatment."

{4} Plaintiff then filed a motion for reconsideration. After briefing was complete, a hearing was held, after which the district court partially denied and partially

---

[1]Section 41-4-30 was explicitly enacted as a "new section of the Tort Claims Act." 2010 N.M. Laws, ch. 22, § 1.

reserved ruling on Plaintiff's motion in a second written order. More specifically, the district court denied reconsideration of its ruling pertaining to damages derived from Plaintiff's loss-of-chance for a better outcome, increased cancer cells in Plaintiff's body, and increased monitoring of Plaintiff for cancer relapse. However, the district court reserved ruling on Plaintiff's claims involving his asserted increased risk of relapse of all other cancers and decreased life expectancy. In this order, the district court explained in more detail its basis for granting summary judgment in favor of UNMH, rejecting "loss-of-chance for the best possible outcome" as itself the damage in a loss-of-chance case. Rather, the district court ruled that under *Alberts*, 1999-NMSC-015, "[t]here must be facts and evidence proving bodily injury and other damages as a result of the alleged loss-of-chance for the best possible outcome."

{5}    Specific to Plaintiff, the district court determined there to be no evidence of increased, or in fact any, cancer cells in Plaintiff's body, a circumstance fatal to Plaintiff's loss-of-chance theory. The district court also ruled that a claim for increased medical monitoring is a derivative claim, like loss of consortium, which consequently also requires proof of bodily injury. The district court therefore denied reconsideration on Plaintiff's claims premised upon his loss-of-chance, increased cancer cells, and increased medical monitoring, but reserved ruling on reconsideration of the dismissal of the claims for decreased life expectancy and

3

increased risk of all other cancers. As to these claims—geared toward future harms Plaintiff might suffer, and not past harm related to the asserted medical negligence—the district court stated that voir dire of expert witnesses was necessary.

{6}     Following a few procedural snafus, including the denial of Plaintiff's motion to modify the district court's second order to include language certifying the order for immediate appeal under Rule 1-054(B) NMRA or for interlocutory appeal, and this Court's order dismissing Plaintiff's ensuing appeal for lack of a final order and remanding to the district court, the district court ultimately denied Plaintiff's motion to reconsider in a collaborative third order. In this order, the district court expressed its corrected understanding that Plaintiff did not seek damages for himself or the class on a theory of increased risk of relapse of all other cancers or of decreased life expectancy, and that its rulings fully disposed of Plaintiff's pleaded claims, noting both Plaintiff's agreement that the order was final and disagreement with the outcome of the district court's collective orders. With an appealable order finally in place, Plaintiff appeals.

**DISCUSSION**

{7}     Plaintiff argues that the district court erred in granting UNMH's motion for summary judgment.[2] "Summary judgment is reviewed on appeal de novo." *Juneau*

---

[2]UNMH argues that Plaintiff failed to address the district court's decision that the TCA—as distinct from redress under exclusively a loss-of-chance claim—requires an actual harm, which Plaintiff did not prove, thus we should affirm on these

*v. Intel Corp.*, 2006-NMSC-002, ¶ 8, 139 N.M. 12, 127 P.3d 548. We review the evidence "in the light most favorable to the party opposing summary judgment." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "In New Mexico, summary judgment may be proper when the moving party has met its initial burden of establishing a prima facie case for summary judgment." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280. "Once this prima facie showing has been made, the burden shifts to the non[]movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citation omitted).

{8}     Plaintiff centrally contends that the district court erred in determining that a plaintiff must demonstrate an actual physical harm in order to establish a loss-of-chance claim. Such a claim exists in New Mexico as recognized by our Supreme Court in *Alberts*, 1999-NMSC-015, ¶ 1, after this Court first adopted the tort in *Baer v. Regents of the Univ. of Cal.*, 1999-NMCA-005, 126 N.M. 508, 972 P.2d 9. In *Alberts*, our Supreme Court states that a lost-chance claim begins when a patient

---

grounds. *See Magnolia Mountain Ltd. P'ship v. Ski Rio Partners, Ltd.*, 2006-NMCA-027, ¶ 34, 139 N.M. 288, 131 P.3d 675 ("[A]n issue is abandoned on appeal if it is not raised in the brief in chief."). Plaintiff responded to this argument in his reply brief, which we need not address. *See Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 29, 127 N.M. 282, 980 P.2d 65 ("[T]he general rule is that we do not address issues raised for the first time in a reply brief."). But, as we affirm on the loss-of-chance grounds, we need not address this argument.

goes to a medical provider with some presenting problem: an "illness, disorder, discomfort, pain, fear, etc." 1999-NMSC-015, ¶ 11 (internal quotation marks and citation omitted). The claim for a loss-of-chance is "predicated upon the negligent denial by a healthcare provider of the most effective therapy for a patient's presenting medical problem," which may consist of "incorrect diagnosis, the application of inappropriate treatments, or the failure to timely provide the proper treatment." *Id.*

{9}     Our Supreme Court clarified that the cause of action is not based on the patient's claim that the malpractice caused their injury, but on whether "the health[]care provider's negligence reduced the chance of avoiding the injury *actually sustained*." *Id.* ¶ 13 (emphasis added). Indeed, in *Alberts*, the Court takes "the opportunity to set forth more explicitly the parameters, elements, and standards of proof for this claim." *Id.* ¶ 10. It lays out each element—duty, breach, loss or damage, and causation, *id.* ¶¶ 17-30—before also reviewing calculation of damages and applying the elements to the facts at hand. *Id.* ¶¶ 31-39. Important to our question on appeal is our Supreme Court's section elaborating on the "[l]oss or damage" element of the tort. *Id.* ¶¶ 21-25.

{10}     To begin, our Supreme Court identifies three harms: the harm of the presenting problem, the lost-chance of avoiding the physical harm, and the physical harm. *Id.* ¶ 21. It first conceptualizes "[t]he chance of a better result . . . as a window

6

of time that existed before the malpractice took place; in that window of time the healthcare provider had an opportunity to timely implement proper medical treatments that would avoid or minimize the occurrence of *the injury*." *Id.* ¶ 22 (emphasis added). It is through the malpractice that "the window of time was closed" to prevent the injury. *Id.* "The claim is not for the subsequent injury, but for the fact that it is now too late to do anything to avoid the injury. Correcting the problem is no longer possible." *Id.* *Alberts* goes on to describe the harm of the presenting problem and the physical problem as "two injuries: the underlying injury caused by the presenting problem and the exacerbation of the presenting problem which evinces the chance that has been lost." *Id.* ¶ 24.

{11}    To focus our analysis for a moment on the "window of time" described initially, *see id.* ¶ 22, the injury required of the tort matches much of the descriptions above—the loss of an opportunity, which would not appear to require an actual secondary injury. However, *Alberts* specifically addresses the necessity of "actual physical harm." *Id.* ¶¶ 23-24. The opinion states, "[T]he injury—the lost chance—is not in any way speculative. It is manifested by *actual physical harm*." *Id.* ¶ 23 (emphasis added). It is hard to envision the tort described so pointedly in *Alberts* as one measured by the injury of physical harm—specifically, injury from illness exacerbated by a healthcare provider's failure to effectuate proper care—to exist in a circumstance where physical harm did not manifest and the lost chance at

7

addressing the presenting medical problem did not tangibly come to pass as it might have.

{12}     Our Supreme Court goes on to conclude that what Plaintiff calls "toxic tort cases," which the Court describes as "cases in which, as a result of the tortious conduct of one party, another party suffers exposure to something harmful, which may, in the future lead to an injury," are not lost-chance cases. *Id.* Plaintiff argues that if we look at this section in the context of our Supreme Court attempting to exclude toxic tort cases and the description of the tort in the earlier opinion, actual harm is not required.

{13}     But this argument is, in our view, convoluted and fails. We simply cannot skip around the straightforward edict that the injury in a loss-of-chance claim is manifested by actual physical harm. *See id.* Our Supreme Court spoke clearly that "the patient must present evidence that the harm for which [the patient] originally sought treatment—the presenting medical problem—was in fact made worse by the lost chance." *Id.* We must abide by its words. *See State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 22, 135 N.M. 375, 89 P.3d 47 (reiterating principle that this Court is bound by our Supreme Court precedent). Indeed, *Alberts* cites a treatise that states, "Of course, the plaintiff or injured person cannot recover merely on the basis of a decreased chance of survival or of avoiding a debilitating illness or injury; the plaintiff must in fact suffer death or debilitating injury before there can

8

be an award of damages." 1999-NMSC-015, ¶ 23 (internal quotation marks and citation omitted). The Court goes on to explain that "[t]he plaintiff's ability to show damages will hinge on the occurrence of the ultimate harm only to the extent, if any, that it reflects the existence or nonexistence of these losses." *Id.* (omission, internal quotation marks, and citation omitted).

{14} Plaintiff contends that these words do not mean what they say based on his view that the persuasive authority cited by the *Alberts* Court "makes clear" that an "independent physical injury . . . is not always required." This persuasive authority, however, requires or encourages a loss-of-chance plaintiff to prove that the loss of a chance resulted in "death or debilitating injury" or "the occurrence of the ultimate harm." *Id.* ¶ 23. In New Mexico, a loss-of-chance claim may be based on "the exacerbation of the presenting problem" or the "physical progression of the patient's disease during a negligent delay." *Id.* ¶¶ 24-25 (internal quotation marks and citation omitted). This makes clear that the third harm described above—the actual harm created after the presenting problem and the lost chance of avoiding the physical harm—is required to establish a loss-of-chance claim. *Id.* ¶¶ 21, 23.

{15} Our conclusion flows directly from *Alberts'* clear articulation of the requirement of an actual harm—"the exacerbation of the presenting problem which evinces the chance that has been lost." *Id.* ¶ 24. *Alberts'* adoption of *Baer* and *Baer*'s citation to the Restatement (Second) of Torts (1965) does not require a different

9

result as Plaintiff claims, given *Alberts'* own stated requirement of a showing of actual harm. *See Alberts*, 1999-NMSC-015, ¶ 9; *Baer*, 1999-NMCA-005, ¶ 12.

{16} Plaintiff next argues that he presented evidence to create a genuine issue of material fact regarding actual harm. UNMH presented evidence that Plaintiff was diagnosed with ALL, was treated at UNMH, and has had no subsequent problems related to his leukemia, including that he has been in complete medical remission since that time. Plaintiff offered no evidence contradicting this showing. The evidence presented demonstrated that complete clinical remission means there is no evidence of leukemia in Plaintiff's body. Plaintiff's ALL was his presenting problem; then there was a window of time UNMH had to timely implement the proper chemotherapy treatments but did not. However, because there was no evidence of leukemia returning to Plaintiff's body—or any other physical harm— after the improper treatment, UNMH made a prima facie case that Plaintiff did not establish an actual harm. Thus, the burden shifts to Plaintiff to demonstrate an actual harm.

{17} Plaintiff argues that UNMH is incorrect that Plaintiff is cured of cancer because his expert, Dr. Claudio Sandoval, testified that a person cannot be cured of cancer because once they are a cancer patient, they are always a cancer patient. This evidence does not have any bearing on actual harm in a loss-of-chance scenario. As Plaintiff's presenting problem was ALL—a cancer—the testimony does little more

10

than purport that he would currently be a cancer patient even if he got the correct treatment. Thus, this testimony from Dr. Sandoval does not demonstrate actual harm based on UNMH's treatment of Plaintiff's ALL. Put simply, the evidence does not show that Plaintiff has cancer or has suffered any other actual harm stemming from the substandard treatment he received.

{18} Plaintiff next points to Dr. Sandoval's testimony that Plaintiff's treatment resulted in "decreased leukemia cell kill and increased risk of recurrence and death and deprived them of the chance for the best possible recovery." We note that Plaintiff agreed that he was in remission. Thus, even if UNMH's treatment killed less leukemia cells than it would have had it been the proper administration of chemotherapy, Plaintiff does not disagree that, at the time the motion was filed, no leukemia was in Plaintiff's body. As such, he had no exacerbation of the presenting problem—his ALL. *See Alberts*, 1999-NMSC-015, ¶ 24. Also, an increased chance of recurrence and dying are exactly what *Alberts* decries as insufficient to demonstrate actual harm. *See id.* ¶ 23 ("Loss-of-chance does not involve prognostication about future injury or harm . . . [but rather] the patient must present evidence that the harm for which [they] originally sought treatment—the presenting medical problem—was in fact made worse by the lost chance." (citation omitted)). Thus, Plaintiff has not shown a genuine issue of material fact regarding the actual

harm he sustained based on UNMH's treatment and, therefore, we must affirm the district court.[3]

**CONCLUSION**

{19}    We affirm.

{20}    **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**MEGAN P. DUFFY, Judge**

_____
**KATHERINE A. WRAY, Judge**

---

[3]We lastly note that Plaintiff mentions that a different district court judge initially found that Plaintiff was harmed based on decreased leukemia cell kill, increased risk of death, and the loss of the best chance for a better outcome in its order certifying the class. Plaintiff references law of the case as an applicable theory and posits that such a determination must be adhered to throughout the case, but never elaborates or makes an argument as to why law of the case would require reversal in this instance. Thus, we do not address law of the case. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."). We note that the context in which the district court's earlier statement was made was altogether different than that in which the ensuing district judge resolved the case under the standards applicable to summary judgment.